# United States Court of Appeals
## For the First Circuit

───────────

No. 23-1855

UNITED STATES OF AMERICA,

Appellee,

v.

NATHAN REARDON,

Defendant, Appellant.

───────────

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Lance E. Walker, U.S. District Judge]

───────────

Before

Gelpí, Selya, and Rikelman,
Circuit Judges.

───────────

Matthew K. Winchester and Law Offices of Matthew K. Winchester
on brief for appellant.
Darcie N. McElwee, United States Attorney, and Benjamin M.
Block, Assistant United States Attorney, on brief for appellee.

───────────

August 5, 2024

───────────

**SELYA,** <u>**Circuit Judge**</u>.  Defendant-appellant  Nathan
Reardon  challenges  his  top-of-the-range  sentence  following  the
revocation  of  a  term  of  supervised  release.   Concluding,  as  we  do,
that   the   appellant's   sentence   is   procedurally   sound   and
substantively reasonable, we affirm.

I

We briefly rehearse the relevant facts and travel of the
case.   In  2022,  the  appellant  pleaded  guilty  to  five  counts  of
bank  fraud.   <u>See</u>  18  U.S.C.  §  1344.   Those  charges  arose  in
connection with fraudulent loan applications that he submitted for
pandemic-relief  funds.   The  district  court  sentenced  him  to  five
concurrent  twenty-month  terms  of  imprisonment,  to  be  followed  by
three  years  of  supervised  release.   We  vacated  one  condition
embedded  in  the  district  court's  judgment — a  special  condition  of
supervised  release  that  banned  the  appellant  from  self-employment
— because it was imposed without adequate explanation.  <u>See</u> <u>United
States</u>  v.  <u>Reardon</u>  (<u>Reardon I</u>),  102  F.4th  558,  570  (1st  Cir.  2024).
This  was  the  only  aspect  of  the  judgment  that  the  appellant
challenged  in  <u>Reardon I</u>.   On  remand,  the  district  court  entered  an
amended judgment that did not affect the revocation sentence.[1]

---

[1] This   amended   judgment   retained   the   self-employment
condition,  but  the  district  court  provided  a  fuller  explanation
for  it.   We  note  that  the  appellant  has  not  argued  on  appeal  that
our  recent  decision  vacating  the  self-employment  ban  undermined
the  district  court's  ability  to  enforce  that  restriction  at  the

The appellant's supervised release term commenced on July 7, 2023.  Within less than six weeks, the probation office filed a petition to revoke his supervised release.  As relevant here, the petition alleged that the appellant had violated the following four supervised release conditions:[2]  1) that he provide his probation officer with any requested financial information; 2) that he shall not be self-employed, shall be continuously employed by a disinterested third party, shall not open any businesses, sole proprietorships, partnerships, limited partnerships, or corporations, and shall dissolve any corporations and businesses that existed on the date of his sentencing (as said, we previously vacated the self-employment condition for lack of adequate explanation as to why it was the minimum restriction necessary to protect the public, see Reardon I, 102 F.4th at 559, 570); 3) that he truthfully answer any questions asked by his probation officer; and 4) that he not incur new credit charges or open additional lines of credit without advance approval.

According to the probation office (which filed a revocation report), the appellant engaged in the following conduct during the first several weeks of his supervised release term:

time of these violations.  Given the lack of any objection, we are confident that this development does not affect our analysis.

[2] The petition also alleged a fifth violation that the government later declined to pursue.  That alleged violation is of no relevance here.

- 3 -

- On July 10, the appellant was instructed to complete forms related to his financial resources and return them with supporting documentation by July 26.  On July 26, the appellant returned the forms without supporting documentation and was instructed to resubmit the forms with the required documents by August 2.  On August 2, the appellant again failed to submit all the financial documents that he had been instructed to provide.  The missing documents included tax returns, information related to monetary "gifts" he had received from his father, copies of his bankruptcy filing, and information regarding ongoing civil suits.

- On August 10, the appellant was found to have three electronic bank transaction cards in his name. Neither the cards nor the associated accounts had been reported to the probation office in his financial disclosure forms.

- In early August, the appellant met with a town manager in Maine and professed his intention to invest approximately $2,500,000 in the renovation of a local property with the goal of converting it into apartments and a restaurant.

- In August, the probation office received information that, from shortly before his release from federal custody to around August 10, the appellant acted as a landlord for properties managed by a company that he used to own but had subsequently transferred to his father. His probation officer had advised him in July — in response to the appellant's inquiry about whether he could work for his father — that the probation office would review a proposed plan for such an arrangement but would not grant the appellant blanket permission to work for his father without a specific plan in place.

- The appellant represented himself in electronic communications and on his personal website as the "President/Founder/CEO" of a business called Membership Auto. In response to the probation office's directive that he cease making this representation if it was not true, the appellant explained that Membership Auto had never existed other than as a "business idea." Nevertheless, the representation remained on his LinkedIn page as of August 31. What is more, online records showed Membership Auto to have existed beyond merely an

"idea"; for example, it had been listed by the Florida Division of Corporations Fictitious Name Detail in expired status and had been named as a defendant in a civil suit.

- In mid-August, the appellant signed (without prior approval from the probation office) a loan agreement between him and his father.

On August 24, 2023, the district court held a preliminary hearing and determined that there was probable cause to believe that the appellant had violated the conditions of his supervised release. The court then held a detention hearing and ordered the appellant detained pending further proceedings. At his revocation hearing on October 13, 2023, the appellant did not contest the alleged violations. Without objection, the district court calculated a guideline sentencing range of three to nine months. The government argued for a nine-month sentence followed by a renewed term of supervised release lasting thirty-six months. To this end, the government noted the "immediacy" of the appellant's supervised release violations and suggested that the appellant acted with "a unique and kind of breezy disregard" for his conditions. The government also suggested that the appellant had violated his conditions "in a really open and notorious fashion."

The appellant, meanwhile, sought a sentence of time served or, alternatively, three to six months in home confinement.

- 6 -

While acknowledging that his supervised release term "certainly . . . didn't get off to a good start," he introduced four exhibits in an attempt to show that he had made efforts to comply with the supervised release conditions. These exhibits included a note from a family friend expressing willingness to hire the appellant to work at a convenience store; messages sent by the appellant to his "IT person," asking for the Membership Auto information to be removed from his website and email signature; correspondence between the appellant and his tax attorney, seeking tax documents; and communications from the appellant to his probation officer providing updates on his efforts to compile financial documents and also asking for clarification about whether he was allowed to help with his father's apartments. The appellant emphasized that he intended to seek employment away from his father's business, that he posed no immediate danger to the community, that his wife and five children would face hardship if he were again incarcerated, and that being imprisoned for a longer period of time would make it more difficult for him to pay his restitution. The appellant also indicated that his probation officer had not given him the sufficiently clear guidance that he needed to "stay away" from his father's rental business. Finally, his wife addressed the court to ask that her husband be allowed to come home for the sake of his children.

In pronouncing sentence, the district court acknowledged that it was "required to consider all of the . . . statutory sentencing factors" and said that it had done so.  The court also acknowledged that it was "mindful of all of the mitigating factors" highlighted by the appellant, including "that this [wa]s [the appellant's] first violation" and that the appellant's conduct did not injure "the community . . . in the most primitive way."  At the same time, the court stated that it was "concern[ed]" about how soon the violations began after the start of the appellant's supervised release term and "the relatively flamboyant way in which" the appellant violated his conditions.  The court also stated that it was afraid that if the appellant were to "skim coat over how cavalierly [he] violated [his] conditions of release," he would be "likely to do it again."  The court urged the appellant to practice self-reflection and humility and observed that his "dedicated resistance to complying with the Court's order . . . ha[d] the patina of irrationality."

When all was said and done, the court imposed a nine-month term of imprisonment, followed by a twenty-five-month term of supervised release.  This timely appeal ensued.

## II

In this venue, the appellant argues that his sentence was procedurally flawed because the district court focused inordinately on a sentencing factor that it was not bound to

consider at the expense of adequately assessing the sentencing factors that it was statutorily required to consider. In much the same vein, the appellant also argues that the court "failed to meaningfully address several mitigation points" that he had brought to its attention. Finally, he argues that his top-of-the-range sentence is substantively unreasonable.

In evaluating sentencing appeals, we typically start by "examin[ing] any claims of procedural error" and — if no procedural error is found — we proceed to examine any challenge to the substantive reasonableness of the sentence. United States v. Díaz-Lugo, 963 F.3d 145, 151 (1st Cir. 2020); see United States v. Miranda-Díaz, 942 F.3d 33, 39 (1st Cir. 2019). Following this format, we turn first to the appellant's claims of procedural error.

## A

The parties agree that the appellant failed to preserve his procedural claims. Thus, we review those claims for plain error. See United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001). Under the plain error standard, the appellant must show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Id. We discern no plain error here.

- 9 -

**1**

To begin, the appellant argues that the district court committed procedural error by failing to consider the relevant statutory sentencing factors.  See United States v. Colón-De Jesús, 85 F.4th 15, 20 (1st Cir. 2023).  We do not agree.

Where, as here, a sentence is imposed following the revocation of a term of supervised release, the district court is guided by 18 U.S.C. § 3583(e).  See United States v. Soto-Soto, 855 F.3d 445, 450 (1st Cir. 2017).  Section 3583(e) directs the court to consider sentencing factors such as the nature of the offense, the offender's history and characteristics, the need for deterrence, and the need to protect the public.  Id.; see 18 U.S.C. § 3583(e) (incorporating by reference several sentencing factors limned in 18 U.S.C. § 3553(a)).  In the appellant's view, the district court's explanation for its sentence focused almost exclusively on the matters discussed in 18 U.S.C. § 3553(a)(2)(A) and failed to assess the section 3583(e) factors.[3]

We think that the appellant's characterization of the district court's statements represents a triumph of hope over

---

[3] Section 3583(e) does not incorporate section 3553(a)(2)(A), which directs the court to consider "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  See United States v. Tanco-Pizarro, 892 F.3d 472, 480 (1st Cir. 2018).

reason.  The district court's sentence paid due heed to the
sentencing factors limned in section 3583(e).  The court's emphasis
on the appellant's flagrant disregard for the court's directives,
as well as its concern that he would "likely" transgress his
supervised release conditions again if his present violations were
too lightly glossed over, logically relate to the appellant's
"history and characteristics" and the need for his sentence "to
afford adequate deterrence to criminal conduct."[4]  18 U.S.C.
§ 3553(a)(1), (a)(2)(B).  At no point did the district court state
or otherwise indicate that its judgment was predicated wholly on
the section 3553(a)(2)(A) factor.

On plain error review, we deem the district court's
explanation sufficient to ground a conclusion that the district
court adequately considered the relevant sentencing factors.
After all, the district court — when explicating a sentence — "is
not required to address [the relevant] factors, one by one, in
some sort of rote incantation."  United States v. Ortiz-Pérez, 30

---

[4] Although the appellant argues that the deterrence factor
could not have been relevant because none of his supervised release
violations were criminal, he cites no authority for the proposition
that a district court, when imposing a revocation sentence, may
consider the adequate deterrence of criminal conduct only if the
revocation is based on new instances of criminal conduct.  In this
instance, the appellant's violations involved blatant disregard
for the court's authority and attempts at illicit money-making.
It was reasonable for the district court to conclude from this
behavior that the sentence it imposed was necessary to deter
further criminal conduct.

F.4th 107, 111 (1st Cir. 2022) (quoting United States v. Dixon,
449 F.3d 194, 205 (1st Cir. 2006)).  Nor is the court required to
assign each factor equal weight.  See id. at 113.  As long as "the
sentencing transcript, read as a whole, evinces a sufficient
weighing of the [relevant] factors," no more is exigible.  United
States v. Dávila-González, 595 F.3d 42, 49 (1st Cir. 2010).

       That ends this aspect of the matter.  On this record, we
can readily infer from the district court's explanation which
section 3583(e) factors drove its decision to impose a top-of-the-
range sentence.  And if more were needed, "the fact that the court
stated that it had considered all the [relevant] factors is
entitled to some weight."  Id.

**2**

       We turn next to the appellant's claim that the district
court committed procedural error by "fail[ing] to meaningfully
address proffered mitigation."  This claim, too, lacks force.

       The appellant chiefly relies on United States v. Colón-
Cordero, in which we held that the district court erred because it
was very "plain from the record that the district court never
engaged with Colón's intellectual disability as a mitigating
characteristic," despite the fact that this intellectual
disability was Colón's primary basis for requesting a lower
sentence.  91 F.4th 41, 55 (1st Cir. 2024).  Here, the appellant
argues that the district court failed to consider several

mitigating factors (such as the fact that his conduct was not criminal, that he had made several restitution payments, that he had tried to comply with his supervised release conditions, that his violations did not harm the public, and that his further incarceration would cause familial hardship).

The case at hand is readily distinguishable from Colón-Cordero. There, we reasoned that the district court's sentencing was deficient because the court did not either acknowledge "Colón's dominant mitigation argument" or "say enough from which we could fairly infer how it felt about [that argument]." Id. at 56. We were careful to tie our holding to the facts of the case, noting that, "given Colón's paramount emphasis [on his intellectual disability] as the mitigation argument, . . . the sentencing court should have engaged with it." Id. at 55 (emphasis in original).

Here, by contrast, none of the allegedly mitigating factors that the appellant alluded to were so singularly forceful. In addition, the court below acknowledged that it was "mindful of all of the mitigating factors" advanced by the appellant — and it specifically referred to some of the more cogent mitigation points that the appellant accuses it of ignoring. On this record, there is no sound basis for us to hold — on plain error review — that the district court failed to consider the appellant's proffered mitigation. We cannot find plain error simply because the district court did "not speak to [the appellant's] arguments one by one and

expressly dispose of each of them." Díaz-Lugo, 963 F.3d at 152;
see United States v. Ruperto-Rivera, 16 F.4th 1, 6 (1st Cir. 2021)
("That the court did not explain in exquisite detail why it chose
to afford relatively little weight to the factors that the
appellant advanced in mitigation is not the sort of stuff out of
which a claim of sentencing error can be constructed.").

**B**

This brings us to the appellant's challenge of the
substantive reasonableness of his sentence.  Our review is for
abuse of discretion.  See Holguin-Hernandez v. United States, 589
U.S. 169, 173-74 (2020).

"[T]he hallmarks of a substantively reasonable sentence
[are] 'a plausible sentencing rationale and a defensible result.'"
Díaz-Lugo, 963 F.3d at 157 (quoting United States v. Martin, 520
F.3d 87, 96 (1st Cir. 2008)).  Because the appellant's only attack
on the substantive reasonableness of the sentence is that "[o]n
these facts, nine months was not a defensible result," our analysis
focuses on the "defensible result" element.

"To undercut the substantive reasonableness of a within-
guidelines sentence, . . . a[n] [appellant] must furnish 'powerful
mitigating reasons and persuade us that the district judge was
unreasonable in balancing pros and cons despite the latitude
implicit in saying that a sentence must be "reasonable."'"  United
States v. Morales-De Jesus, 896 F.3d 122, 126 (1st Cir. 2018)

(quoting United States v. Navedo-Concepción, 450 F.3d 54, 59 (1st Cir. 2006)); see United States v. Clogston, 662 F.3d 588, 592 (1st Cir. 2011) ("There is no one reasonable sentence in any given case but, rather, a universe of reasonable sentencing outcomes."). Here, the appellant has offered no compelling arguments in mitigation.

To be sure, the appellant strives to persuade us that a top-of-the-range sentence is inconsistent with the fact that he attempted to comply with his supervised release conditions. In his view, his attempts are demonstrated by the exhibits that he introduced at his revocation hearing. We are not convinced.

There is no need to tarry. The appellant has not shown that he was unable to comply with his supervised release conditions or even that his efforts to comply were particularly robust. At best, the exhibits he presented to the district court show that he made some effort to comply with a few of the conditions. It was within the district court's discretion to conclude that these feeble efforts did not mitigate the appellant's flagrant noncompliance. In short, the appellant's attempts to comply do not suffice to undermine the district court's well-reasoned finding that the appellant violated his supervised release conditions in a "relatively flamboyant way," which warranted a top-of-the-range sentence.

This is especially true when one considers the lengthy list of violations described in the probation office's revocation report.  Based on the facts memorialized in that report and accepted by the district court, a top-of-the-range sentence is readily defensible.

The appellant has a fallback position.  He contends that his sentence is unreasonable because — as he sees it — several of the sentencing factors supported a non-custodial sentence.  But even if some factors supported a non-custodial sentence — a matter on which we take no view — it was well within the encincture of the district court's discretion to decide that other factors (such as the history and characteristics of the offender) weighed more heavily in favor of a top-of-the-range custodial sentence.  See Clogston, 662 F.3d at 593 ("A sentencing court is under a mandate to consider a myriad of relevant factors, but the weighting of those factors is largely within the court's informed discretion.").  The appellant's suggestion that only a non-custodial sentence was within the realm of reasonableness is no "more than a thinly disguised attempt . . . 'to substitute his judgement for that of the sentencing court.'"  United States v. Vargas-García, 794 F.3d 162, 167 (1st Cir. 2015) (quoting Clogston, 662 F.3d at 593).  Accordingly, we reject the appellant's claim of error.

Finally, the appellant asserts — without explaining his reasoning — that the "import of [18 U.S.C. § 3553(a)(6), that is, 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct'] militated against a custodial sentence" for a case like the case at hand.  The appellant does not cite any authority for this ipse dixit, and we are aware of none.  Nor does he develop his assertion in any meaningful way.  We therefore deem the argument waived.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (explaining "settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

### III

We need go no further.  For the reasons elucidated above, the judgment of the district court is

**Affirmed**.